RECEIVED
Mail Room

JUL 1 0 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL HANSMEIER,
        Plaintiff;

v.

WILLIAM P. BARR,
        Defendant.

Civil Action No. 1:20-CV-1410 (UNA)

PLAINTIFF'S MOTION FOR A
PRELIMINARY INJUNCTION

Plaintiff Paul Hansmeier respectfully moves the Court for a preliminary injunction preventing Defendant Attorney General, as well as his officers, agents, employees, attorneys, and all other persons in active concert or participation with him, from enforcing or threatening to enforce the mail fraud, wire fraud or extortion statutes to Hansmeier or anyone assisting him with enforcing copyrights via the Olan Mills copyright enforcement method.

Respectfully Submitted,

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

Paul Hansmeier,
　　　Plaintiff,

v.

William Barr,
　　　Defendant,

Civil Action No. 1:20-cv-1410 (UNA)

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072



RECEIVED
Mail Room

JUL 1 0 2020

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

In support of his Motion for a preliminary injunction, Plaintiff Paul Hansmeier states as follows:

## I. Background.

Plaintiff Paul Hansmeier owns a copyright to an adult video and seeks to enforce that copyright via the method used by the copyright holders in Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th Cir. 1994) and Malibu Media, LLC v. Doe, No. 13-11432, U.S. Dist. LEXIS 79889 (E.D. Mich. June 12, 2014), among other cases (the "Olan Mills" method). To this end, Hansmeier instructed an investigator to present the video to suspected infringers via a notorious digital piracy website. On June 29, 2020, an Internet user logged onto the notorious digital piracy website, browsed the website until he found Hansmeier's video and used the website to obtain a copy of the video from Hansmeier's investigator's computer.

Hansmeier does not know the infringer's name. But he does know

the Internet Protocol ("IP") address the infringer used to copy Hansmeier's

video. By filing a John Doe action and obtaining court permission to

subpoena John Doe's Internet Service Provider, Hansmeier will likely be

able to identify the infringer. See, e.g., Strike 3 Holdings, LLC v. Doe,

No. 1:18-cv-2211 (PLF/GMH), 2019 U.S. Dist. LEXIS 68231 (D.D.C.

Apr. 23, 2019) (granting permission to conduct such discovery). Accordingly,

Hansmeier seeks to file a John Doe action to ascertain the infringer's

identity.

Hansmeier cannot do so without facing a credible risk of criminal

prosecution. In December 2016, the government charged Hansmeier

with federal mail and wire fraud based on allegations that Hansmeier used

the Olan Mills copyright enforcement method, but concealed his use

of the method and his involvement with the cases. The Court may

take judicial notice of the existance of the allegations in Hansmeier's indictment, which is publicly available at United States v. Hansmeier, No. 16-cr-334 (D. Minn.). Hansmeier's challenge to the legal sufficiency of the indictment is pending before the U.S. Court of Appeals for the Eighth Circuit. No. 19-2386 (8th Cir.). In its appellate response brief, the government repeatedly referred to Hansmeier's copyright enforcement litigation as extortion — though that offense was not charged in the indictment. Finally, the indictment alleged that Hansmeier brought claims pursuant to the Computer Fraud and Abuse Act that were entirely invented claims of hacking into computers that did not exist.

Hansmeier's anticipated John Doe action, which will follow the form of complaint attached as Exhibit A to his complaint in this matter, will attempt to proactively address much of what the government complained of in the indictment. Hansmeier will be the named plaintiff, which will eliminate any ambiguity about Hansmeier's involvement in the case. Hansmeier's use of

the Olan Mills copyright enforcement method will be disclosed in the complaint, which will eliminate any concern about Hansmeier concealing his use of the Olan Mills copyright enforcement method. Finally, Hansmeier's complaint will provide sufficient detail about his Computer Fraud and Abuse Act claim so the deciding court and the John Doe defendant will understand Hansmeier's Computer Fraud and Abuse Act claim for what it is— i.e., that the John Doe defendant committed an "access provision" violation by accessing Hansmeier's / Hansmeier's investigator's computer without authorization and obtaining Hansmeier's video, 18 U.S.C. § 1030(a)(2).

Notwithstanding his proactive efforts to address the government's issues with his copyright enforcement litigation, Hansmeier continues to face a credible threat of criminal prosecution if he files his John Doe action. This is true for at least two reasons. First, the government continues to take the position that Hansmeier's use of the Olan Mills copyright enforcement method vitiated Hansmeier's copyright infringement claims — even though this is the

opposite of what the Eighth Circuit held in Olan Mills. See Government Brief

at 36-37, No. 19-2386 (8th Cir.). And, it should be noted, the Eighth

Circuit's holding in Olan Mills is perfectly consistent other legal authority. See,

e.g., BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc., 149 F. Supp.

3d 634, 678 (E.D. Va. 2015)("[u]se of ... undercover investigators and the

like to ferret out infringement is routine, and provides no defense."

(citing 4-13 Nimmer on Copyright § 13.04[B].)). Second, given the

government's willingness to base theories of federal mail and wire fraud on use of

judicially accepted litigation methods, it is not possible for Hansmeier to predict

what other reasons the government may have to believe that Hansmeier's use of

the Olan Mills copyright enforcement method is criminal.

    Time is of the essence. Hansmeier's only lawful means of ascertaining

the infringer's identity is to issue a subpoena to the infringer's Internet

Service Provider. In responding to Hansmeier's subpoena, the infringer's Internet

Service Provider will reference a data record which shows the subscriber to whom

an IP address was assigned on a given date and time. Hansmeier's ability to

proceed with his claims against the infringer will be destroyed when the data

record is destroyed. See World Digital Rights, Inc. v. John Does 1-80, No.

2:12-cv-225, 2012 U.S. Dist. LEXIS 64894, at *5 (S.D. Fla. May

8, 2012)("In general, the data retention policies of ISPs for information sufficient

to correlate an IP address to a subscriber is a very limited amount of time."),

In addition, critical evidence is subject to spoilation. The "smoking gun"

piece of evidence in Hansmeier's John Doe action will be a copy of his video

on the infringer's computer; the infringer is under no obligation to preserve

his hard drive until he is notified of Hansmeier's action. Finally, this is an

"offense in progress" scenario. John Doe, the infringer, used the BitTorrent

file distribution method to obtain a copy of Hansmeier's video. Under the default

settings of the most popular BitTorrent software, John Doe will continue

distributing Hansmeier's video to third parties until he manually stops the

distribution.

## II. Argument.

A plaintiff seeking a preliminary injunction must establish (1) that he is likely to

succeed on the merits, (2) that he is likely to suffer irreparable harm in the

absence of preliminary relief, (3) that the balance of equities tips in his favor,

and (4) that an injunction is in the public interest. Aamer v. Obama, 742 F.3d

1023, 1039 (D.C. Cir. 2014). The D.C. Circuit uses a balancing or

"sliding scale" approach: where a "movant makes an unusually strong showing

on one of the factors, then it does not necessarily have to make a strong

showing on another factor." Davis v. Pension Benefit Guar. Corp., 571

F.3d 1288, 1292 (D.C. Cir. 2009). But see Holmes v. FEC, 71

F. Supp. 3d 178, 183 n.4 (D.D.C. 2014)(suggesting that a

positive showing on all four factors may be required).

As a threshhold matter, though, Hansmeier must establish Article III standing. To establish Article III standing, "a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood the injury will be redressed by a favorable decision." Woodhull Freedom Found. v. United States, No. 18-5298, 2020 U.S. App. LEXIS 2217 (D.C. Cir. Jan, 24, 2020)(internal quotation marks omitted).

Courts distinguish between "post-enforcement" and "pre-enforcement" standing challenges. A "post-enforcement" standing showing is the appropriate standard where, as here, a statute has been enforced against a plaintiff for engaging in certain conduct. Here, Hansmeier is writing this motion from federal prison after having been convicted of mail and wire fraud based on allegations that his use of the Olan Mills copyright enforcement method vitiated his copyright enforcement claims and made virtually every single thing he did in the case "fraudulent." Under this standard, Hansmeier has standing to seek relief because Defendant's actions are interfering with Hansmeier's

-9-

Constitutional rights (injury in fact), it is Defendant's historic and threatened

actions which give rise to this impermissible interference (causal connection); and

and an injunction from this Court would remove the impermissible interference

(redressability).

A "pre-enforcement" standing showing requires a plaintiff to establish additional

sub-elements of the injury element so as to ensure that the plaintiff is bringing a real dispute

to the court. First, a plaintiff must show an intent to engage in a course of conduct arguably

affected with a constitutional interest. Hansmeier's intent to petition the courts for relief

satisfies this element. Second, the conduct must be proscribed by statute. Unless Hansmeier

prevails on appeal, the judgment of his district judge satisfies the "proscribed by statute"

element. Finally, a plaintiff must show a credible risk of criminal prosecution.

Hansmeier can make this showing by pointing to his prior prosecution and the

fact he is writing this motion from federal prison.

Hansmeier readily satisfies the requirements for standing.

A.   Hansmeier is likely to succeed on the merits.

Hansmeier is likely to succeed on the merits because his position is consistent with the "overwhelming weight of authority" holding that the mail fraud, wire fraud and extortion statutes cannot be applied to allegations centered in litigation conduct— even allegations of baseless or fraudulent litigation activities. Carroll v. United States Equities Corp., 2019 U.S. Dist. LEXIS 162631, at * 35 (N.D. N.Y. Sept. 24, 2019). In addition, Defendant's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's copyright enforcement litigation would violate the First and Fifth Amendments to the U.S. Constitution and impermissibly interfere/intrude upon powers delegated to the legislative and judicial branches of the federal government.

1.   Hansmeier's position is consistent with the "overwhelming weight of authority."

Hansmeier's position is consistent with the "overwhelming weight of authority.

-11-

"The reality is that litigating parties often accuse each other of bad faith." United States v. Pendergraft, 297 F.3d 1198, 1207 (11th Cir. 2002)(rejecting mail fraud and extortion charges based on allegations of fraudulent litigation). Thus, the various circuit courts have had opportunity to review the application of the federal mail fraud, wire fraud and extortion statutes to allegations of fraudulent litigation— where these crimes serve as predicate acts supporting civil RICO claims. Although most of these decisions occurred in the civil context, it is a cardinal rule that courts must interpret statutes consistently across the criminal and noncriminal contexts. See Leocal v. Ashcroft, 543 U.S. 1, 12 n. 8 (2008).

A survey of circuit court decisions indicates that apparently every federal appellate court to consider the issue has rejected the application of the mail fraud, wire fraud and extortion statutes to allegations of fraudulent litigation. See Kim v. Kimm, 884 F.3d 98, 104 (2d Cir. 2018)(collecting cases from the First, Fifth, Tenth and Eleventh Circuits in concluding that "allegations of frivolous, fraudulent,

or baseless litigation activities — without more — cannot constitute a RICO predicate act."). _See also_ _Vemco, Inc. v. Camardella,_ 23 F.3d 129, 134 (6th Cir. 1994) (threat of litigation "does not constitute extortion."); _First Pac. Bancorp, Inc. v. Bro,_ 847 F.2d 542, 547 (9th Cir. 1988) (same); _I.S. Joseph Co. v. J. Lauritzen A/S,_ 751 F.2d 265, 267 (8th Cir. 1984) (holding that threat to sue, even if "groundless and made in bad faith," did not constitute extortion.).

Although the D.C. Circuit does not appear to have weighed in on this issue, numerous district court decisions from this Circuit reach the same result as the circuit court decisions cited above. _See, e.g., Republic of Kazakhstan v. Stati,_ 380 F. Supp. 3d 55, 61 (D.D.C. 2019) (quoting _Feld Entm't, Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals_, 873 F. Supp. 2d 288, 318-19 (D.D.C. 2012)), aff'd, 2020 U.S. App. LEXIS 5438 (D.C. Cir. Feb. 21, 2020), and _Quick v. EduCap, Inc.,_ 318 F. Supp. 3d 121, 141-42 (D.D.C. 2018) ("As Plaintiffs' RICO claim is premised entirely on mailings done for the purpose

of litigation activity, they have failed to state a claim.").

The foregoing decisions arose in a wide variety of contexts, but consistently articulate similar justifications for rejecting the application of federal mail fraud, wire fraud and extortion statutes to allegations of fraudulent litigation activities. First, courts reason that applying those statutes to litigation activity would impermissibly undermine the judicial system by allowing every judgment to be relitigated in a subsequent proceeding. Second, courts have cited the concern that applying these statutes to litigation would impermissibly undermine access to the courts because any unsuccessful lawsuit could lead to drastic liability. See Kim, 384 F.3d at 104 (cataloging concerns).

Hansmeier is likely to succeed on the merits because his position is consistent with the "overwhelming weight of authority" holding that the mail fraud, wire fraud and extortion statutes cannot be applied to allegations of fraudulent litigation activity.

2. The government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's anticipated copyright enforcement litigation would violate the First and Fifth Amendments of the U.S. Constitution and would impermissibly intrude upon powers delegated to the legislative and judicial branches.

Hansmeier's anticipated copyright enforcement litigation will be associated with colorable claims. The government's application of the federal mail fraud, wire fraud and extortion statutes to deter colorable claims raises a series of Constitutional problems.

a. Hansmeier's anticipated copyright enforcement litigation will be associated with colorable claims.

Hansmeier's anticipated copyright enforcement litigation will be associated with colorable claims under the Copyright Act and the Computer Fraud and Abuse Act. The claims will arise from a common set of facts:

- Hansmeier will instruct an investigator to make a copyrighted work available to suspected infringers via a notorious digital piracy website; and

- Hansmeier will bring claims against users who access Hansmeier or his investigator's computer to obtain a copy of Hansmeier's video.

These facts give rise to a colorable claim for copyright infringement. In the Eighth Circuit, which is where Hansmeier's anticipated claims will be brought, "[t]he elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work."). <u>Warner Bros. Entm't v. One X Prods.</u>, 644 F.3d 584, 595 (8th Cir. 2011). Even in his criminal case, Hansmeier's showing of those two elements has not been challenged. Rather, the government alleged that Hansmeier's use of an investigator gave rise to a defense in the hands of the infringer. But the Eighth Circuit held the direct opposite in <u>Olan Mills</u> and mandated entry of judgment in the copyright holder's favor. <u>See also</u> <u>BMG Rights Mgmt. (US) LLC</u>, 149 F. Supp. 3d at 678 ("[U]se of ... undercover investigators and the like to ferret out infringement is routine, and provides no defense."). Of course, Hansmeier's

-18-

claims will be subject to the same uncertainties inherent in any litigation.

Hansmeier is not asking the Court to conclude that his copyright infringement claims

will neccessarily succeed; rather, all Hansmeier is asking the Court to do is

agree that his copyright infringement claims will at least be colorable.

A Computer Fraud and Abuse Act "access provision" claim arises

when a person: (1) intentionally accesses a computer; (2) without authorization; and

(3) obtains information from any protected computer. 18 U.S.C. § 1030 (a)(2)(C).

In Hansmeier's anticipated cases, the infringer will have intentionally accessed

Hansmeier's or his investigator's computer and obtained Hansmeier's video. In other

words, there will not be any serious debate that the infringer obtained Hansmeier's

video and he acted with intent to connect to a computer. Where Hansmeier expects

the government to join issue is precisely where it attacked Hansmeier's copyright

infringement claim: the "authorization" element. Hansmeier expects the government

to argue that the infringer was "authorized" to access the computer because

the investigator made it available to users of the notorious digital piracy website.

But this availability = authorization is precisely ^what the Eighth Circuit rejected in <u>Olan Mills</u>

and which other courts have rejected in their decisions. As one court explained it:

just because it might be <u>easy</u> to steal an unlocked bike from your neighbor's

porch does not mean it is <u>legal</u> to do so, <u>Harrington v. Aerogelic Ballooning, LLC</u>

2019 U.S. Dist. LEXIS 177929, at 6 n3 (D. Colo. Aug. 8 2019). While there is no

guarantee that a court will side with Hansmeier's reasoning, Hansmeier's position

is a far cry from frivolous. As a final note, a party bringing a civil claim under

the Computer Fraud and Abuse Act must satisfy certain other requirements. <u>See</u>

18 U.S.C. § 1030(g). Those requirements are readily met here, were not challenged

in Hansmeier's criminal proceeding and are not further addressed in this memorandum.

    As shown above, Hansmeier's claims under the Copyright Act and Computer

Fraud and Abuse Act will, at a minimum, be colorable.

b. Application of the mail fraud, wire fraud and extortion statutes to deter colorable claims violates the Constitution.

The government's use of the mail fraud, wire fraud and extortion statutes to ~~deter~~ deter Hansmeier's copyright infringement and Computer Fraud and Abuse Act claims violates the First and Fifth Amendments to the U.S. Constitution and impermissibly intrudes upon powers delegated to the legislative and judicial branches.

i. First Amendment.

The government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's anticipated claims unduly burdens Hansmeier's petitioning and speech rights. The Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Borough of Duryea v. Guarnieri, 564 U.S. 379, 387 (2011). An effort by the government to criminalize colorable claims is akin to a content-based speech restriction because it "cannot be justified without reference

to the content of the regulated speech." <u>Reed v. Town of Gilbert</u>, 135 S. Ct. 2218, 2227 (2015). Content-based speech restrictions are presumptively unconstitutional and subject to strict scrutiny. <u>Id.</u> at 2226. Strict scrutiny is also warranted because Hansmeier's claims go to the heart of political issues of public concern. Members of all three branches of the federal government have attacked Hansmeier's litigation model, which its critics label "trolling." <u>See</u>, e.g., <u>Strike 3 Holdings, LLC v. Doe</u>, 351 F. Supp. 3d 160, 160-63 (D.D.C. 2018)(summarizing political case against "copyright trolling"); Stop Copyright Trolls Act of 2019. Legislative efforts by its political opponents have failed to defeat "trolling." Any effort by the executive to subvert the democratic process by "reinterpreting" the federal criminal statutes to outlaw litigation of a particular type should be subject to strict scrutiny. <u>Snyder v. Phelps</u>, 562 U.S. 443, 453 (2011) (noting that special protection extends to speech "relating to any matter of political, social, or other concern to the community....").

"To survive strict scrutiny ... a statute must: (1) serve compelling governmental

interest; be narrowly tailored to achieve that interest; and (3) be the least restrictive

means of advancing that interest." ACLU v. Mukasey, 534 F.3d 181, 190

(3d Cir. 2008) (citing Sable Commc'ns. of Cal. Inc. v. FCC, 492 U.S. 115

(1989)).

Compelling Interest.  The government cannot identify a compelling interest

in applying the mail fraud, wire fraud and extortion statutes to Hansmeier's anticipated

copyright enforcement litigation.  Respectfully, the government will have to make the

case for what interest it has applying these statutes to Hansmeier's copyright enforcement

litigation. Based on the nature of the statutes, the government's assertion of interest is

expected to be something along the lines of preventing Hansmeier from deceiving the

courts and the infringers (mail and wire fraud) and preventing Hansmeier from

unduly pressuring the infringers into a settlement (extortion). As applied to Hansmeier's

anticipated copyright enforcement litigation, the government cannot point to any

Material deceptions in Hansmeier's form of complaint — which arguably goes well beyond a short and plain statement of the facts in an effort to address the government's prior allegations of wrongdoing. Moreover, by subjecting himself to the judicial process, Hansmeier opens himself up to discovery from the infringers, to questions from the Court and to any discovery a court permits an intervenor (such as the government) to issue. Subjecting oneself to the discovery process is the antithesis of deceit. So too is subjecting oneself to the litigation process the antithesis of extortion. In litigation, parties resolve their disputes under the watchful eye of a judge who holds great power to check any litigation abuses. Hansmeier has the benefit of the perspective provided by meeting <u>real</u> extortionists in federal prison and he believes that the infringers and everyone else should be careful about immaturely referring to the federal court process as extortion, lest they demean the process out of existence. Based on the foregoing, it is unclear what compelling interest would be served by the application of mail fraud, wire fraud and extortion statutes to Hansmeier's copyright

-23-

enforcement claims.

Narrowly Tailored/Least Restrictive Means. Even if the government had a sufficiently compelling interest in applying the mail fraud, wire fraud and extortion statutes to Hansmeier's copyright enforcement claims, these statutes are not narrowly tailored to achieve those interests. Moreover, the government's application would fail to satisfy the least-restrictive-means test because it "effectively suppresses a large amount of [constitutionally-protected] speech ... [when] less restrictive alternatives would be at least as effective in achieving" its purported goal. Ashcroft v. ACLU, 542 U.S. 656, 665 (2004)(quoting Reno v. ACLU, 521 U.S. 844, 874 (1997)). "[T]he burden is on the Government to prove that the proposed alternatives will not be as effective as the challenged statute," Id. That burden is "not merely to show that a proposed less restrictive alternative has some flaws; its burden is to show that it is less effective," Id. at 669. The government cannot satisfy that burden.

-23-

Hansmeier's argument on this point boils down to an assertion that we can (indeed, must) trust the courts to resolve legal disputes and check litigation misconduct. In <u>Pendergraft</u>, the Eleventh Circuit rejected the application the mail fraud and extortion statutes to allegations of fraudulent litigation, observing:

> History has taught us that, if people take the law into their own hands, an endless cycle of violence can erupt; and we therefore encourage people to take their problems to court. We trust the courts, and their time-tested procedures, to produce reliable results, separating validity from invalidity, honesty from dishonesty. While our process is sometimes expensive, and occasionally inaccurate, we have confidence in it.

<u>Pendergraft</u>, 297 F. 3d at 1206. Our litigation system, as it exists today, is fully capable of fairly resolving legal disputes. Indeed, in Hansmeier's experience as an associate at a large law firm, talented entrepreneurs from other countries flock to the United States to start businesses based in significant part on their confidence in our legal system relative to the legal systems in their home countries. Hansmeier cannot imagine and the government will

be unable to identify any deficiency in our legal system that could conceivably justify allowing Assistant United States Attorneys to indict and lock up parties to litigation and their attorneys for taking legal positions that are consistent with circuit court precedent, but contrary to what a particular prosecutor believes the law should be, with all of the chilling effects that would entail.

For all of the reasons the government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's anticipated copyright enforcement claims violates the Petition Clause, such application also violates Hansmeier's First Amendment right to speech. Inherent in any litigation is speech to the Court, between attorney and client, between client and experts and between the plaintiff and defendant. The government's application of the foregoing criminal statutes to Hansmeier's copyright enforcement litigation is not tied to a compelling governmental interest and is neither narrowly tailored nor the least restrictive means of achieving any claimed interest.

- 25 -

For all of the reasons set forth above, the government's application of the mail fraud, wire fraud and extortion statutes to the <u>Olan Mills</u> copyright enforcement method violates the First Amendment to the U.S. Constitution.

## II.  <u>Fifth Amendment.</u>

The government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's copyright enforcement method violates Hansmeier's Fifth Amendment right to Due Process. "A law may be vague in violation of the Due Process clause for either one of two reasons: First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement. <u>Act Now To Stop War & End Racism Coal. v. District of Columbia</u>, 846 F.3d 391, 409 (D.C. Cir. 2016). As applied to Hansmeier's use of the <u>Olan Mills</u> copyright enforcement method, the mail fraud, wire fraud and extortion statutes do both.

As applied to Hansmeier's use of the <u>Olan Mills</u> copyright enforcement method, the mail fraud, wire fraud and extortion statutes fail to provide the kind of notice that will enable ordinary people to understand what conduct they prohibit. An ordinary person would believe that the use of the <u>Olan Mills</u> copyright enforcement method results in colorable, if not meritorious, claims and that a person who brings colorable claims to federal court would not be subject to fraud or extortion liability. Indeed, in light of the "overwhelming weight of authority" rejecting the application of the mail fraud, wire fraud and extortion statutes to the legal process, an ordinary person would believe that the mail fraud, wire fraud and extortion statutes have no application to their conduct whatsoever. An ordinary person would understand that we have an adversary system where the expectation is that each party will advance their position at the expense of their adversary — subject to the disciplinary sanctions provided by Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Article III inherent power, among other provisions. While an ordinary person would

would understand that they would be prosecuted for perjury for giving false sworn testimony; No ordinary person would expect to be prosecuted for fraud or extortion for applying an intellectual property rights enforcement model that has been successfully used in their circuit.

Beyond lack of notice, the mail fraud, wire fraud and extortion statutes, as applied to Hansmeier's use of the <u>Olan Mills</u> copyright enforcement method, authorize and even encourage arbitrary and discriminatory treatment. The government's application of these statutes to the copyright enforcement litigation alleged in Hansmeier's complaint cannot be justified by reference to any objective standard, including (but not limited to): the plain texts of the mail fraud, wire fraud or extortion statutes; the plain texts of the Copyright Act and Computer Fraud and Abuse Act; and case law interpreting those statutes. The complete untethering of the government's use of the mail fraud, wire fraud and extortion statutes to criminalize unwanted (in their view) intellectual property rights enforcement invites the government to use those statutes

-28-

to deter through criminalization <u>any</u> litigation a given prosecutor dislikes — which, of course, is precisely the sort of standardless environment the Fifth Amendment prohibits.

### iii. <u>Separation of powers.</u>

The government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's use of the <u>Olan Mills</u> copyright enforcement method is unconstitutional because it impermissibly disrupts the separation of powers among the three branches of the government. Pursuant to the doctrine of separated powers, the powers of government are separated among the three coordinate branches. The declared purpose of separating and dividing the powers of government was to "diffuse power the better to secure liberty." <u>Youngstown Sheet + Tube Co. v. Sawyer</u>, 343 U.S. 579, 635 (1952). The principle of separating powers into three separate hands is the core animating feature of the Constitution. The Federalist No. 47, at 324 (J. Cooke ed. 1961).

- 28 -

Political scientists recognize the vital role that separating powers plays in securing liberty. See Sir William Blackstone, Commentaries on the Laws of England, 146 (9th ed.) (1783) ("In all tyrannical governments the supreme magistracy, or the right of both making and of enforcing the laws, is vested in one and the same man, or one and the same body of man; and wherever these two powers are united together, there can be no public liberty." Scholars focus in particular on the dependence of free societies on maintaining the separation of power to make the law from the power to enforce the law. See, e.g., Edward Gibbon, History of the Decline and Fall of the Roman Empire, 33 (1838)("The principles of a free constitution are irrecoverably lost, when the legislative power is nominated by the executive."). Thus, when Tesla and SpaceX founder Elon Musk, who is South African by birth, recently observed that there is no other country in which he could have done what he did and that America is the land of opportunity, he was right; our Constitution, with its separation of

powers, provides the people with the space free from government encroachment to pursue their biggest dreams.

Thus, our Constitution divides powers among the legislative, judicial and executive branches. The legislative power is vested in Congress. U.S. Const. Art. 1 §1. So too is the power to promote the useful Arts through copyrights. U.S. Const. Art. 1 §8. Congress has the power to make the laws and protect creative works; Congress has exercised this power by creating the Copyright Act. Congress also created the Computer Fraud and Abuse Act. Article III Section 1 of the U.S. Constitution vests the judicial power, i.e. the power to say what the law is, in the federal courts. The judiciary has exercised this power by interpreting the Copyright Act and the Computer Fraud and Abuse Act.

The Attorney General's use of the mail fraud, wire fraud and extortion statutes to criminalize Hansmeier's use of the Olan Mills copyright enforcement method is a naked power grab. Congress, not the Attorney General, is assigned

the power to establish intellectual property rights and the methods by which those

rights may be enforced. The plain texts of the Copyright Act and the Computer Fraud

and Abuse Act, as interpreted by federal courts, support Hansmeier's use of the Olan

Mills copyright enforcement method. And, respectfully, Hansmeier submits that the

phrase "power grab" is not too strong. For even after being notified of Olan Mills

and similar decisions, the government continued to claim at the district court level and

now on appeal that Hansmeier's use of the Olan Mills copyright enforcement method

vitiated his claims and rendered his litigation fraudulent; this is not merely a case of

the government's failure to conduct adequate legal research in the course of crafting

its charges.

The Attorney General's power grab is a significant power grab. The Attorney

General has claimed the power to prosecute litigants who bring colorable claims which

conflict with the President's personal interests and preferences. Left unchecked,

assumption of this power would neuter the legislative and judicial powers because

- 32 -

people will not feel safe enforcing their rights under the law if such enforcement

can result in a lengthy prison sentence even for colorable claims. The will of Congress

and the judgment of the federal courts will be a very distant second place consideration

for citizens who face the tradeoff between bringing legitimate claims but going to

prison and foregoing/abandoning claims but preserving liberty. The Attorney General's

power grab is precisely the "supreme magistracy" warned of by Blackstone. The

framers of the Constitution gave this Court "the necessary constitutional means, and

personal motives to resist encroachments [by the Attorney General]." The Federalist

No. 51, at 349. (J. Cooke ed. 1961). Hansmeier asks the Court to exercise

its power to check the Attorney General's power grab.

   B. <u>Hansmeier is likely to suffer irreparable harm in the absence of preliminary relief</u>

      Hansmeier will suffer imminent and irreparable harm absent a preliminary

injunction. Standing alone, Defendant's violation of Hansmeier's First Amendment

rights "unquestionably constitutes irreparable injury." <u>Elrod v. Burns</u>, 427 U.S.

347, 373 (1976). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury for the purposes of the issuance of a preliminary injunction." _Elrod_, 427 U.S. at 373. "Where a plaintiff alleges injury from a rule or regulation that directly limits speech, the irreparable nature of the harm may be presumed." _Bronx Households of Faith v. Bd. of Educ. of City of N.Y._, 331 F.3d 342, 349 (2d Cir. 2003). On these grounds alone, Hansmeier establishes the requisite harm.

Moreover, Hansmeier's ability to protect his copyright from John Doe's infringement faces a credible risk of being permanently destroyed absent a preliminary injunction. As set forth, _supra_ at 6-8, Hansmeier does not know the infringer's (i.e., the individual whose IP address Hansmeier's investigator observed copying Hansmeier's video) name. Rather, Hansmeier knows the infringer by his IP address. The infringer's Internet service provider has a data file that can link the IP address to its account holder. With this information Hansmeier will likely

be able to identify the infringer. The infringer's Internet service provider does not permanently retain the data file; when the data file is destroyed Hansmeier will have no lawful means of discovering the infringer's identity. Preliminary injunctive relief is necessary to prevent that case destroying development. Moreover, critical evidence is at risk of being permanently destroyed. As noted earlier, the "smoking gun" piece of evidence in this case will be a copy of Hansmeier's video on John Doe's computer. The infringer is under no obligation to preserve evidence until he is on notice of Hansmeier's claim. Finally, the infringer is <u>currently</u> irreparably harming Hansmeier by, to Hansmeier's belief, making Hansmeier's video available for distribution to third-parties and, in fact, making such distributions.

C. The balance of equities and public interest strongly favor a <u>preliminary injunction.</u>

Since this case involves the government, the balance-of-equities factor merges with the fourth factor, public interest. <u>Nken v. Holder</u>, 556 U.S.

- 35 -

418, 435 (2009).  When considering the competing claims of injury and the effect on each party of the granting or withholding of the requested relief, the balance strongly favors Hansmeier.

The government will suffer no harm from Hansmeier's requested relief, i.e. a preliminary injunction against the government's application of the mail fraud, wire fraud and extortion statutes to Hansmeier's use of the Olan Mills copyright enforcement method. All that this will entail is an investigator posting Hansmeier's copyrighted video to a notorious digital piracy website, Hansmeier. bringing claims under the Copyright Act and Computer Fraud and Abuse Act against people who pirate the work; and federal judges making decisions about whether Hansmeier's claims should continue proceeding towards a judgment. The government, by the way, has every opportunity to be heard in this process by filing a statement of interest on behalf of the United States; there is no need for the government to resort to the mail fraud, wire fraud and extortion statutes to

have its voice heard.

From Hansmeier's perspective, his interests will be irreparably harmed in the absence of a preliminary injunction. The "John Doe" infringer has infringed Hansmeier's copyright in his video, is likely continuing to infringe Hansmeier's copyright, but cannot be identified without timely action in the courts. Hansmeier faces a credible risk of criminal prosecution if he attempts to bring Olan Mills claims in federal court, having been previously prosecuted for doing so. Preliminary relief will provide Hansmeier with the immediate restoration of constitutional rights he is being wrongfully deprived of.

The public interest strongly favors a preliminary injunction. The government's use of the mail fraud, wire fraud and extortion statutes to prosecute attorneys and parties for bringing claims the government disagrees with (for any reason) represents a tectonic shift in the Constitution's diffusion of power; it concentrates power in the executive to prosecute and imprison anyone who takes a position in a judicial proceeding

-37-

that the executive disapproves of (for any reason). A preliminary injunction will serve to maintain the Constitutional order while the weighty issues raised by the government's application of the mail fraud, wire fraud and extortion statutes to allegations of meritless litigation are argued to and decided by this Court.

And, despite its vocal minority of detractors, Hansmeier's use of the Olan Mills copyright enforcement method is valuable litigation activity for the public. Widespread Internet-based copyright infringement destroys markets for books, movies, music, software and other cultural contributions. The government is powerless to stop BitTorrent-based infringement because it is decentralized; there is no central server to seize. In Hansmeier's experience, one straightforward way to combat BitTorrent-based piracy is to sue end users, i.e. the people who pirate works for personal consumption. Without this ever being a contemplated goal, Hansmeier's prior use of the Olan Mills copyright enforcement method resulted in at least two BitTorrent piracy havens voluntarily shutting their doors; Hansmeier's interpretation of the events was

-38-

by suing a critical mass of the users of those networks, the networks ceased to function. And even if Hansmeier's use of the <u>Oian Mills</u> copyright enforcement method is not successful in shutting down piracy networks in general, he is very confident that the end users he sues will avoid piracy in the future; they will convert from pirates to consumers. The government cannot do this; the criminal copyright infringement statute only allows the government to pursue people who pirate for profit, i.e. who are redistributing to earn money. It is difficult for traditional rights holders to do so as well because suing your fans for copyright infringement tends to alienate your fan base. Hansmeier has met several federal prisoners who refuse to listen to Metallica based on nothing more than Metallica drummer Lars Ulrich's pro-end user litigation stance in the days of Napster. Thus, people like Hansmeier, whose personal brand essentially revolves around suing pirates, serve a socially valuable role in stamping out Internet-based piracy, thus preserving the markets for and the public's access to creative and culturally valuable works.

## III. Conclusion.

The Court should grant Hansmeier's motion for a preliminary injunction.

Respectfully Submitted,

Dated: July 1, 2020

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL HANSMEIER,
   Plaintiff,

v.

WILLIAM P. BARR,
   Defendant.

Civil Action No. 1:20-cv-1410 (UNA)

DECLARATION OF PAUL HANSMEIER
IN SUPPORT OF PLAINTIFF'S MOTION FOR
A PRELIMINARY INJUNCTION.

Plaintiff Paul Hansmeier states under the penalty of perjury that the following is true to the best of his knowledge, information and belief:

1. I am the plaintiff in this matter. I am over 18 years old and am competent to testify regarding the matters discussed herein.

2. I am the owner by assignment of a copyright in an adult video.

3. In late-June 2019, I asked an investigator to make the video available to suspected infringers by posting the video on a notorious digital piracy website.

4. According to logs furnished by the investigator, on June 29, 2020, a user of the website browsed the website until he found my video, and made a copy of the video from my investigator's computer.

—1—

5. At all times relevant to this matter, I have sought to use what my complaint describes as the <u>Olan Mills</u> Copyright enforcement to enforce copyrights in adult videos.

6. I am currently deterred/chilled from doing so based on the fact that I was prosecuted based in relevant part on allegations I used copyright enforcement methods that my complaint describes as the <u>Olan Mills</u> Copyright enforcement methods. I feel like I am put between the rock and hard place of accepting the piracy of my intellectual property, on the one hand, and facing criminal prosecution if I bring my claims to court, on the other.

Dated: <u>July 1, 2020</u>

Paul Hansmeier

−2−

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL HANSMEIER,
    Plaintiff,

v.

WILLIAM P. BARR,
    Defendant.

Civil Action No. 1:20-cv-1410 (UNA)

PROPOSED ORDER

Based on all of the files, records and proceedings;

It is hereby ORDERED that Plaintiff's motion for a preliminary injunction is GRANTED. Defendant, as well as his officers, agents, employees, attorneys, and all other persons in active concert or participation with him, are hereby ENJOINED from enforcing or threatening to enforce the mail fraud, wire fraud or extortion statutes (18 U.S.C. §§ 1341, 1343 and 1951, respectively) against Hansmeier or anyone assisting him with enforcing copyrights via the _Olan Mills_ copyright enforcement method.

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL HANSMEIER,
            Plaintiff,

                                                Civil Action No. 1:20-cv-1410 (UNA)

v.

                                                CERTIFICATE OF SERVICE

WILLIAM P. BARR,
            Defendant.

The undersigned is awaiting issuance of summons. Accordingly this motion and its supporting documents have not yet been served.

Paul Hansmeier
20953-041 Unit K3
Federal Correctional Institution
P.O. Box 1000
Sandstone, MN 55072